UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ADIL RAHMAN, Personal Representative of the heirs of FAZAL RAHMAAN, deceased and WAHIDA FAZAL RAHMAAN, deceased, YASEEN ABDUL FATTAH EL-AAYI and EZZAT ELAAYI, Co-Personal Representatives of the heirs of ABDUL FATTAH ELAAYI, deceased, ABDUL REHMAN POLANI, Personal Representative of the heirs of ABDUL RAHIM ZAIN POLANI, deceased, SARAH ABDUL RAHIM POLANI, deceased, MUHAMMAD IBRAHIM POLANI, deceased, MUHAMMAD USMAN POLANI, deceased, MUHAMMAD SIDDIQUE POLANI, deceased, AMIN SATTAR, Personal Representative of the heirs of MOHAMMED SHABBIR, deceased, and AZMAT YAR KHAN, Personal Representatives of the heirs of MUHAMMAD YAR KHAN, deceased, | Civil No. 20cv1524 (JBA)<br><br>February 14, 2022 |
| *Plaintiffs*, | |
| *v.* | |
| GENERAL ELECTRIC CORPORATION; GE CAPITAL AVIATION SERVICES, LIMITED; and CELESTIAL AVIATION TRADING 34 LIMITED, | |
| *Defendants*. | |

**ORDER GRANTING MOTION TO DISMISS**

Plaintiffs, the representatives of the estates and heirs of fifteen passengers who died as a result of a plane crash in Pakistan, filed this suit against Defendants General Electric Corporation ("GE"), GE Capital Aviation Services, Limited ("GECAS, Ltd."), and Celestial Aviation Trading 34 ("Celestial"). Plaintiffs bring Connecticut state law claims of negligence and wrongful death pursuant to Connecticut General Statutes § 52-555. Defendants Celestial and GECAS, Ltd. (collectively, the "Irish Defendants") move to dismiss the Amended Complaint against them under Federal Rule of Civil Procedure 12(b)(2) for lack of personal

jurisdiction and Rule 12(b)(6) for failure to state a claim for which relief can be granted. (Defs.' Celestial and GECAS's Joint to [sic] Dismiss ("Defs.' Mot.") [Doc. # 59] at 2.) For the following reasons, the Irish Defendants' motion is GRANTED.

## I.      Facts Alleged

This matter stems from the crash of a Pakistan International Airlines ("PIA") domestic flight that killed more than seventy-five individuals. (Am. Compl. ¶¶ 7, 28.) Plaintiffs' decedents were passengers on this flight, which crashed in a failed landing attempt that significantly damaged the aircraft. (*Id.* ¶¶ 17, 19-20.) Defendant GE is a corporation with its principal place of business in Ohio; and Defendants GECAS, Ltd. and Celestial are foreign corporations with principal places of business in Ireland. (*Id.* ¶¶ 4-6.) Plaintiffs allege that Defendants GECAS, Ltd. and Celestial owned the aircraft involved in the crash and leased it to PIA at the time of the accident. (*Id.* ¶¶ 13-14, 18.)

GE conducts business in Connecticut though GE Capital Aviation Services, LLC ("GECAS, LLC"), located in Norwalk, CT. (John Ludden Dep., Pls.' Ex. B [Doc. # 62-3] at 13:11-17.) The Amended Complaint alleges that Defendant GE wholly owns the Irish Defendants and that GE controls, directs, supervises, and authorizes the manner in which they conduct their activities through a number of interlocking officers and directors. (Am. Compl. ¶ 9.) The Amended Complaint alleges, for example, that the chairman of Defendant GECAS, Ltd. is the President and Chief Executive Officer of GECAS, LLC and is a Senior Vice President of Defendant GE, and the President of Defendant GECAS, Ltd. is a long-time employee of Defendant GE. (*Id.* ¶ 13.) Plaintiffs claim that the Irish Defendants negligently leased the aircraft which is the subject of this action to PIA at the direction of Defendant GE through GECAS, LLC. (*Id.* ¶¶ 14-15.)

Plaintiffs allege that the control Defendant GE exerted over the Irish Defendants exceeded that typical of mere ownership of subsidiary companies; instead, Defendant GE

treated the Irish Defendants like operating divisions. (*Id.* ¶¶ 20-21.) Specifically, Plaintiffs

allege that Defendant GE directly participated in the business of the Irish Defendants, at

Defendant GE's discretion, including supervising and directing the Irish Defendants in their

leasing of the accident aircraft to PIA. (*Id.* ¶¶ 22-23.)

Moreover, Plaintiffs allege that PIA acted as the agent to all three Defendants who

were the lessors of the accident aircraft. (*Id.* ¶ 25.) Plaintiffs claim that Defendants owed a

duty of care to Plaintiffs' decedents and Defendants breached that duty of care by negligently

leasing the accident aircraft to PIA despite their knowledge of PIA's poor safety record and

unqualified flight crews. (*Id.* ¶¶ 26-27; Count II ¶ 18.) Finally, Plaintiffs allege that

Defendants, through their agent PIA, negligently operated the accident aircraft leading to the

deaths of Plaintiffs' decedents. (*Id.*) The Irish Defendants, however, move to dismiss because,

as they argue, the Court does not have personal jurisdiction over them, and Plaintiffs have

not stated a claim for which relief can be granted. (Defs.' Mot. at 2.)

## II.      Standard of Review[1]

To successfully defeat a motion to dismiss pursuant to Federal Rule of Civil Procedure

12(b)(2), the "plaintiff bears the burden of showing that the court has jurisdiction over the

defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). The

burden varies depending on the procedural posture of the case. *See Ball v. Metallurgie

Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990). Where there has been extensive

discovery conducted but a district court has not conducted a full-blown evidentiary hearing

in adjudicating a motion pursuant to Federal Rule of Civil Procedure 12(b)(2), plaintiffs need

only make a prima facie showing of personal jurisdiction.[2] *Metro. Life Ins. Co. v. Robertson-*

_____

[1] The Court does not address the 12(b)(6) standard because it does not reach that issue.
[2] Because the Irish Defendants have challenged the Court's personal jurisdiction over them
through a 12(b)(2) motion and neither Plaintiffs nor the Irish Defendants requested an
adjudication of jurisdictional facts, the Court did not hold an evidentiary hearing with respect

*Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996), *cert. denied*, 519 U.S. 107 (1996); *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008). A plaintiff's prima facie showing of personal jurisdiction "must include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant." *Metro. Life Ins. Co.*, 84 F.3d at 567. Pleadings, affidavits, and other supporting materials must be construed in the plaintiff's favor. *Edberg v. Neogen Corp.*, 17 F. Supp. 2d 104, 110 (D. Conn. 1998) (citing *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)).

### III.    Discussion

The Irish Defendants move to dismiss the claims against them in their entirety on two grounds: (1) the Court lacks personal jurisdiction over the Irish Defendants because they are headquartered and have their principal places of business in Ireland and have no connection to Connecticut or the United States related to the accident or accident aircraft; and (2) Plaintiffs failed to state a claim for which relief can be granted  because the Irish Defendants were not in actual possession or operational control of the accident aircraft and are thus statutorily immune from liability pursuant to 49 U.S.C. § 44112. (Defs.' Mot. at 2.) Because the Court concludes that it does not have personal jurisdiction to consider claims against the Irish Defendants, it does not opine on the applicability of § 44112.

With respect to personal jurisdiction, the Irish Defendants argue that the Court's assertion of personal jurisdiction over them would offend constitutional due process. (Defs.' Mem. at 10-11.) They emphasize that the matter arises from the crash of an aircraft in Pakistan operated by the national flag carrier of Pakistan, which leased the aircraft from the Irish Defendants who negotiated the lease agreement in Pakistan and the United Arab

---

to personal jurisdiction. *See Ball*, 902 F.2d at 197 ("If the defendant is content to challenge only the sufficiency of the plaintiff's factual allegation, in effect demurring by filing a Rule 12(b)(2) motion, the plaintiff need persuade the court only that its factual allegations constitute a prima facie showing of jurisdiction.").

Emirates. (*Id.* at 13.) Therefore, Defendants argue that they have no meaningful contacts with Connecticut in connection with the claims brought by Plaintiffs. (*Id.* at 14.) Moreover, Defendants argue that "Plaintiffs' stunted and unserious attempt at veil piercing" is also "unavailing." (Defs.' Reply at 2.) They maintain that Plaintiffs have misrepresented the nature of the decision-making process and that Defendant GECAS, Ltd. negotiated the lease and collected payments therefrom. (*Id.* at 5-7.)

Conversely, Plaintiffs argue that the Court has personal jurisdiction pursuant to Connecticut's long-arm statute because they allege that the Irish Defendants engaged in "tortious conduct in this state, whether arising out of repeated activity or single acts." (Mem. of Certain Pls. in Opp'n to Mot. to Dismiss of Defs. GE Capital Aviation Servs. Ltd. & Celestial Aviation Trading 34 Ltd. [Doc. # 62] ("Pls.' Mem.") at 8 (citing Conn. General Statutes § 33-929(f)(4)).)[3] Plaintiffs argue that the Irish Defendants engaged in this activity by negligently leasing the accident aircraft to PIA when they knew or reasonably should have known that PIA had a poor safety record. (*Id.*) Plaintiffs do not allege that the Irish Defendants conducted this activity directly, however, as the lease was not executed in Connecticut. Instead, Plaintiffs ask the Court to consider Defendant GECAS, Ltd. and non-party GECAS, LLC to be acting as one entity under the brand "GECAS" because the two entities share "interlocking" corporate officers. (*Id.* at 9-10.) Thus, Plaintiffs argue that the Irish Defendants' tortious conduct was performed through the "GECAS entities" because GECAS, LLC's approval was necessary before GECAS, Ltd. and Celestial could lease the accident aircraft. (*Id.* at 11.) Plaintiffs contend that this relationship between GECAS, Ltd. and GECAS, LLC is one of principal and agent. (*Id.*) Under this theory, Plaintiffs argue that the Irish Defendants are

---

[3] The two co-administrators for the Estate of Abdul Fattah Elaayi filed a separate opposition in addition to the opposition submitted by the other plaintiffs. (*See* Docs. ## 62 and 63.) As each opposition advances essentially the same arguments, the Court refers only to Doc. # 62.

responsible for non-party GECAS, LLC's conduct because GECAS, LLC acted as their agent.

(*Id.* at 11-12.)

Broadly, a court may exercise personal jurisdiction over a defendant upon satisfaction

of three conditions: (1) procedurally proper service of process to the defendant; (2) the

existence of a statutory basis for personal jurisdiction; and (3) the assertion of personal

jurisdiction comports with Due Process Clauses found in the Fifth and Fourteenth

Amendments. *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016). While

the Irish Defendants have waived service, Plaintiffs have failed to make a prima facie case

that a statutory basis exists for personal jurisdiction that comports with due process.

### A.  Statutory Basis for Personal Jurisdiction[4]

At the outset, there appears to be no statutory basis for the Court to assert personal

jurisdiction over the Irish Defendants. Ordinarily, Connecticut's long-arm statute provides a

foundation for the assertion of personal jurisdiction by Connecticut courts over foreign

corporations. Section 33-929 provides in pertinent part:

> Every foreign corporation shall be subject to suit in this state, by a resident of
> this state or by a person having a usual place of business in this state, whether
> or not such foreign corporation is transacting or has transacted business in
> this state and whether or not it is engaged exclusively in interstate or foreign
> commerce, on any cause of action arising . . . [o]ut of tortious conduct in this

---

[4] In their Amended Complaint, Plaintiffs allege personal jurisdiction is satisfied by 28 U.S.C.
§ 1369. In 2002, Congress enacted § 1369, expanding the original jurisdiction of federal
courts to include lawsuits arising from accidents where more than 75 natural persons die at
a discrete location, provided that the other requirements of the statute are satisfied. *See id.*
There is no language in the statute suggesting that it does more than provide subject-matter
jurisdiction for the consolidation in one federal court of all litigation stemming from a major
disaster. *See Passa v. Derderian*, 308 F. Supp. 2d 43, 53-54 (D. R.I. 2004). *But see Siswanto v.
Airbus*, 153 F. Supp. 3d 1024, 1027 (N.D. Ill. 2015) (Observing that § 1369 could provide a
statutory basis for personal jurisdiction through Federal Rule of Civil Procedure 4(k)(1)(C),
subject to due process considerations). Moreover, Plaintiffs appear to have abandoned this
contention, as the statutory basis for their personal jurisdiction arguments rests solely in
Connecticut's long-arm statute. (*See* Pls.' Mem. at 8-12.) Thus, the Court analyzes Plaintiffs'
argument with respect to the Connecticut long-arm statute only.

state, whether arising out of repeated activity or single acts, and whether
arising out of misfeasance or nonfeasance.

Conn. Gen. Stat. § 33-929(f)(4). Courts in this District have concluded that a foreign

corporation may be subject to this provision if it is registered and authorized to do business

in the state, provided that due process requirements also have been satisfied. *See Brown v.

CBS, Corp.*, 19 F. Supp. 3d 390, 395-96 (D. Conn. 2014). But "the defendant's literal presence

in Connecticut when engaging in the actionable conduct" is not required for finding personal

jurisdiction so long as "a defendant's tortious conduct [is] directly and expressly targeted at

the forum state." *Gen. Star Indemn. Co. v. Anheuser-Busch Cos.*, 199 F.3d 1322 (2d Cir. 1999)

(summary order).

Plaintiffs' argument that the Irish Defendants engaged in tortious conduct when

decision-makers purportedly located in Connecticut approved the lease agreement suffers

from a major flaw. Connecticut's long-arm statute subjects foreign corporations to suit "by a

resident of this state or by a person having a usual place of business in this state." § 33-

929(f)(4). Plaintiffs allege that they are residents of Missouri, Texas, and Florida, but not

Connecticut. (*See* Am. Compl. ¶ 3.) Plaintiffs do not allege that they do business in the state

of Connecticut.[5] Thus, they have not alleged a proper basis for applying the long-arm statute.

### B. Due Process Considerations

Moving beyond the Connecticut long-arm statute, assertion of personal jurisdiction

over the Irish Defendants does not satisfy due process. "Constitutional due process assures

that an individual will only be subjected to the jurisdiction of a court where the maintenance

---

[5] At oral argument, Plaintiffs for the Estate of Abdul Fattah Elaayi represented that the administrators of the Estate now do business in Connecticut, appearing to bring their claims in compliance with the Connecticut long-arm statute. However, as the Court explains *infra*, that development does not disturb the Court's disposition because Plaintiffs have not made a prima facie showing that assertion of personal jurisdiction over the Irish Defendants does not offend due process.

of a lawsuit does not offend 'traditional notions of fair play and substantial justice.'" *Waldman*, 835 F.3d at 328 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). *International Shoe* and its progeny established two tests for due process: the "minimum contacts" inquiry and the "reasonableness" inquiry. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002).

The minimum contacts inquiry requires a determination of whether a defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction over the defendant. *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014). To have sufficient minimum contacts, "it is essential . . . that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citation omitted). This requirement protects defendants from being hauled into court based on "random," "fortuitous," or "attenuated" contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citations omitted).

The reasonableness inquiry requires a court to determine whether the assertion of personal jurisdiction over the defendant comports with "'traditional notions of fair play and substantial justice'" under the circumstances of the case. *Waldman*, 835 F.3d at 327 (quoting *Daimler*, 571 U.S. at 754). Under this standard, a court maintains specific jurisdiction over a corporate defendant where some single or occasional in-state acts of that defendant give rise to lawsuits related to that activity.[6] *Metro. Life Ins. Co.*, 84 F.3d at 127 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).

---

[6] Under *Int'l Shoe*, a court also may assert general jurisdiction over foreign corporations to hear any claims against them when their activities with the forum state are so "continuous and systematic" as to render them essentially at home in the forum state. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Discussion of this avenue for asserting personal jurisdiction is unnecessary, however, because Plaintiffs do not claim—

Plaintiffs have not alleged that the Irish Defendants maintain sufficient minimum contacts with Connecticut. The Irish Defendants are not incorporated in Connecticut and they do not transact business in Connecticut. Additionally, the lease agreement for the accident aircraft was not signed or negotiated in Connecticut. (*See* Lease Agreement, Pls.' Ex. A [Doc. # 62-2] at 10.) To overcome these facts, Plaintiffs advance the argument that the Irish Defendants acted as the principals to non-party GECAS, LLC when they ratified GECAS, LLC's approval of the lease agreement by executing the deal. (Pls.' Mem. at 10-11.) According to Plaintiffs' theory, GECAS, LLC's negligent approval of the lease agreement can be imputed to GECAS, Ltd. and Celestial by virtue of GECAS, LLC's approval authority. Thus, GECAS, LLC's tortious actions in Connecticut with respect to the leasing of the accident aircraft were the Irish Defendants' too. Under this view, Plaintiffs seemingly have deftly avoided their minimum contacts problem.

Not so. Plaintiffs' theory suggests that a court may hold one corporation responsible for the actions of another based on the decision-making authority of one over the other in order to acquire personal jurisdiction. Plaintiffs call this arrangement a principal-agent theory, but it is better identified as piercing the corporate veil. *See S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 139 (2d Cir. 2010) (noting that courts disregard corporate formalities when a corporation's owner exercises "total and exclusive domination of the corporation"). Indeed, the very reasoning behind corporate veil piercing "is that, because the two corporations (or the corporation and its individual alter ego) are the same entity, the jurisdictional contacts of one are the jurisdictional contacts of the other for the purposes of the *International Shoe* due process analysis." *Patin v. Thoroughbred Power Boats*, 294 F.3d 640, 653 (5th Cir. 2002) (collecting cases).

---

and parties' averments do not reflect—that the Court would have general jurisdiction over the Irish Defendants.

Even the record evidence to which Plaintiffs refer in support of their agency argument shows that what they seek is to treat these corporate entities as "one entity." (Pls.' Mem. at 9-10.) For instance, Plaintiffs point to the document approving the lease agreement, suggesting that the general reference to "GECAS"—as opposed to "GECAS, LLC" or "GECAS, Ltd."—indicates that GECAS, Ltd. and GECAS, LLC acted as one company. (Pls.' Mem. at 9-10 (citing Pls.' Ex. F [Doc. # 62-7] at 1).) Plaintiffs further support the notion that the two entities acted as one with the testimony of John Ludden, General Counsel for Defendant GECAS, Ltd., in which they claim he represented that GECAS, Ltd. required the approval of GECAS, LLC before executing the lease agreement. (*Id.* (citing John Ludden Dep., Pls. Ex. B [Doc. # 62-3] at 100:7-11).) Finally, Plaintiffs argue that "GECAS, LLC is an owner of GECAS, Ltd. (Ex. E) and virtually all the senior officers of GECAS, Ltd. had the same duties at the same time with GECAS, LLC." (*Id.* at 4-5 (referencing Corp. Chart, Pls.' Ex. E. [Doc. # 62-6]).)

In crafting its agency theory to satisfy the minimum contacts test, Plaintiffs may have escaped the lion, but they have fallen to the bear. At oral argument, Plaintiffs were adamant that this argument does not call for veil piercing, yet they failed to articulate a substantive distinction between the two. The case law Plaintiffs provided in their briefing offers no further clarity. Plaintiffs cited to *Cefaratti v. Aranow*, but that case speaks only to the rule in Connecticut that principals may be held liable for the conduct of their agents when those agents have apparent authority to act. 321 Conn. 593, 611 (2016). Plaintiffs also cited *Adler v. Snoddy* for the proposition that a Connecticut court may exercise personal jurisdiction over an individual and his agent, a foreign corporate entity, for a claim arising from the tortious conduct of that corporate entity when directed toward the state on that individual's behalf. No. CV020399008, 2003 WL 22413500, at *5-7 (Conn. Super. Ct. Oct. 7, 2003). The *Adler* court, however, did not confront the circumstances present in this matter. The defendants in *Adler* were a foreign corporate entity and an individual on whose behalf it had acted, not a

10

Connecticut corporate entity acting as the agent to a foreign corporate entity in which it has a significant ownership interest. Absent from Plaintiffs' arguments is case law persuading the Court that it may bypass corporate veil piercing standards to assert personal jurisdiction over a corporate defendant in favor of an alternative principal-agent theory. The conclusion is inescapable: without treating GECAS, LLC as the alter ego to the Irish Defendants (or vice versa) and piercing the corporate veils of those entities, Plaintiffs' agency argument fails.

Because Plaintiffs cannot make a prima facie showing that a statutory basis for asserting personal jurisdiction exists or that any assertion of personal jurisdiction otherwise comports with due process, they have not carried their burden. The Court is without personal jurisdiction to hear their claims against the Irish Defendants.

## IV.     Conclusion

For the forgoing reasons, Defendants GECAS, Ltd.'s and Celestial's Motion to Dismiss [Doc. # 59] is GRANTED.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 14th day of February 2022

11